# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 41902

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Opinion No. 45 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: July 17, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| SHAYNE RAY BURGESS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

Judgment of conviction for aggravated assault on certain law enforcement personnel; use of a deadly weapon in the commission of a crime; and resisting or obstructing officers, affirmed.

Sara B. Thomas, State Appellate Public Defender; Kimberly E. Smith, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Shayne Ray Burgess appeals from the judgment of conviction entered after he was found guilty by a jury of aggravated assault upon certain personnel, use of a deadly weapon in the commission of a crime, and resisting and obstructing officers. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Burgess was the passenger in a vehicle being driven by his wife when a trooper attempted to stop the vehicle for not having a license plate. Burgess's wife did not pull over, but attempted to flee from the trooper before finally stopping on the median side of the freeway. Burgess exited the vehicle with a knife in his hand. Several additional officers arrived on scene, and when Burgess failed to follow the officers' commands to drop the knife, the officers resorted to

1

non-lethal measures to neutralize the threat by using a beanbag gun and a Taser on him. One of the officers testified that as he approached Burgess to use the Taser on him, Burgess lunged at him with the knife. Burgess testified that he did not lunge at the officer, but fell forward when he was hit by a beanbag. He further testified that he was suicidal and hoped that brandishing the knife would lead the officers to shoot and kill him.

The State charged Burgess with aggravated assault upon certain personnel, Idaho Code §§ 18-915(1), 18-901(b); use of a deadly weapon in the commission of a crime, I.C. § 19-2520; and resisting and obstructing officers, I.C. § 18-705.

Burgess testified in his own defense at trial. During cross-examination of Burgess, the State sought to admit statements that Burgess made to the trooper in the patrol car during his transport to the hospital following his arrest. Defense counsel objected, arguing the statements were made in violation of Burgess's *Miranda*[1] rights and they were coerced. Additionally, Burgess moved to exclude a statement he made to hospital staff that he had used methamphetamine on the day of the offense. Burgess argued that the probative value of the evidence was substantially outweighed by its unfairly prejudicial effect. The district court overruled both objections and admitted the statements.

The jury found Burgess guilty of the charged offenses. The district court imposed a unified sentence of seven years with four years determinate for aggravated assault upon certain personnel, a consecutive sentence of five years indeterminate for use of a deadly weapon in the commission of a crime, and a concurrent sentence of one year determinate for resisting and obstructing officers. Burgess timely appeals.

## II.

## ANALYSIS

### A.    Pre-*Miranda* Statements Made to Police

Burgess argues that the district court erred when it allowed the State to introduce, on cross-examination, Burgess's non-*Mirandized* statements. Statements obtained by police in violation of an accused's *Miranda* rights may not be used in the State's case-in-chief, but are admissible to impeach the accused if he testifies at trial. *Harris v. New York*, 401 U.S. 222, 224 (1971); *Michigan v. Harvey*, 494 U.S. 344, 350-51 (1990). Even this limited use is not

---

[1]    *Miranda v. Arizona*, 384 U.S. 436 (1996).

permissible, however, for statements that an accused made involuntarily. *State v. Cherry*, 139 Idaho 579, 581-82, 83 P.3d 123, 125-26 (Ct. App. 2003).

As an initial matter, the State argues that Burgess waived his right to challenge the admissibility of the statements made to the trooper, because he did not file a pretrial motion to suppress. Idaho Criminal Rule 12(b)(3) and (c) provides that "[m]otions to suppress evidence on the ground that it was illegally obtained" "must be raised prior to trial." Failure to file a motion to suppress constitutes a waiver, but the court may grant relief from the waiver for cause shown. I.C.R. 12(f). The purpose of the rule is to avoid trial disruption. *See State v. Collinsworth*, 96 Idaho 910, 912-13, 539 P.2d 263, 265-66 (1975); *State v. Gleason*, 130 Idaho 586, 590, 944 P.2d 721, 725 (Ct. App. 1997). Here, Burgess did not file a pretrial motion to suppress the statements that he claims were obtained illegally in violation of *Miranda*, and made no assertion of good cause excusing such failure. He contends, however, that the State admitted the statements were obtained in violation of *Miranda* and therefore, he was excused from the Rule 12(b) requirements. Burgess misconstrues the statements of the prosecutor made after the State's case-in-chief:

> [Prosecutor]: Judge, the last issue for me. Those comments Mr. Burgess makes to [the trooper], I did not attempt to admit in my case-in-chief because there is no Miranda. I didn't want to get into that issue. He's in the back of the car on the way to the hospital. But there has been no claim that those are involuntary. So I think it is permissible for me to cross-examine Mr. Burgess on any statements he made to [the trooper], but I don't want to do that without clarifying first.

The prosecutor did not admit a *Miranda* violation, only that he did not want to get into that issue during the State's case-in-chief. Conversely, the prosecutor argued that the statements were voluntary and thus, indeed, not obtained in violation of *Miranda*. On the other hand, Burgess argued that the statements were coerced and thus, obtained in violation of *Miranda*, rendering them inadmissible. This is precisely the argument that Rule 12(b)(3) requires be made in advance of trial. Burgess waived his objection.

Even if we were to entertain the issue, we can determine no error in the admission of the evidence. The requirement for *Miranda* warnings is triggered by custodial interrogation. *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct. App. 1992). Because Burgess was under formal arrest in the backseat of the patrol vehicle, he was in custody for *Miranda* purposes.

*See Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct. App. 1990). However, there is nothing in our record to suggest that the statements admitted at trial were the product of an interrogation.

In *Miranda*, the United States Supreme Court very simply stated that "by custodial interrogation, we mean questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1996). The term "interrogation" was later refined in *Rhode Island v. Innis*, 446 U.S. 291, 300-02 (1980) to refer "not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Applying this test to the facts of *Innis*, the Court noted that the "first prong of the definition of interrogation" was not satisfied because express questioning had not taken place. *Id.* at 302. After having ruled out express questioning, the Court considered whether the police officers' dialogue was the functional equivalent of questioning by examining whether it was "reasonably likely to elicit an incriminating response." *Id.*

In the present case, the following interaction occurred during the State's cross-examination of Burgess at trial:

[Prosecutor]: Well, you talked about [the trooper]. He's the one that took you to the hospital?
[Burgess]: Yes sir.
[Prosecutor]: All right. And you did have a conversation with him, correct?
[Burgess]: Yes, I did, sir.
[Prosecutor]: All right. As I listened to the tape, one of the first things that you're worried about is a charge just like this, right?
[Burgess]: Uh-huh.
[Prosecutor]: Is that a yes?
[Burgess]: Oh, no. I do not believe I said that actually.
[Prosecutor]: Well, let me ask you, you asked him, "What jail am I going to?" Do you remember that?
[Burgess]: Yes, I do, sir.
[Prosecutor]: And he says, "I'm not taking you to jail. I'm taking you to the hospital," right?
[Burgess]: Yes, sir.
[Prosecutor]: And then you say, "You guys aren't going to try and charge me with assault on an officer because I was trying to die, not hurt anybody?"
[Burgess]: I do not recall saying that. I do recall saying the part I was just trying to die, not hurt anybody though.

4

| [Prosecutor]: | Do you recall [ ] telling him, "That it's still going to come out with assault with a weapon or some shit like that?" |
| [Burgess]: | I do not recall saying that. Most of my general statements was apologizing and saying that I was trying--my intentions were to die that day. |

As to Burgess's first two statements referenced by the prosecutor, Burgess posed questions to the trooper, not the other way around. "[T]he definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Innis*, 466 U.S. at 302. Because these statements were not responses to questions, words, or actions by the trooper, he was not subjected to interrogation when he asked these questions. As to Burgess's final statement referenced by the prosecutor, from our record we cannot tell whether it was also volunteered or in response to questioning designed to elicit an incriminating response. Accordingly, we cannot conclude that Burgess was subject to interrogation, and therefore, his statements were not obtained in violation of *Miranda*.[2] The district court did not err in admitting Burgess's statements into evidence.

## B. Statement Made to Hospital Personnel

Burgess asserts that the district court erred when it admitted the statement he made to hospital staff that he had used methamphetamine earlier in the day, because its probative value is outweighed by its prejudicial effect. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Idaho Rule of Evidence 403. A lower court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 405-06, 807 P.2d 610, 623-24 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989).

In admitting the statement that Burgess injected methamphetamine on the same day he was alleged to have committed the charged crimes, the district court found that the evidence was relevant to Burgess's state of mind, which is precisely what he put at issue. At trial, Burgess asserted that he was suicidal and hoped that brandishing the knife would lead the officers to shoot and kill him. Accordingly, his state of mind was relevant to his defense. In addition,

---

[2] It is difficult to discern the inculpatory nature of the statements, as they were made contemporaneously with the events and are consistent with Burgess's defense that he did not intend an assault, but wanted to be killed.

5

because Burgess testified to the events in question, his drug use bore on the accuracy of his testimony and his credibility. The district court did not err in admitting Burgess's statement.

## III.

## CONCLUSION

Burgess has failed to show that the district court erred in admitting his statements to the police and to hospital personnel. Therefore, Burgess's judgment of conviction and sentences are affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR**.